E-FILED
Monday, 14 July, 2008  11:38:28 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 07-CR-20097** |
| | ) | |
| **KRYSTAL BROWN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION

This case is before the court for ruling on Defendant's Motion to Suppress Evidence (#26).

Following this court's careful consideration of the arguments of the parties and the transcript of the

evidentiary hearing held in this case, Defendant's Motion (#26) is DENIED.

### BACKGROUND

On October 2, 2007, Defendant, Krystal Brown, and her co-defendant Ahkeem J. Thomas,

were charged by indictment (#9) with the armed bank robbery of Busey Bank in Rantoul, Illinois

which took place on September 28, 2007.  Defendant was found to qualify for court-appointed

counsel and Attorney Ellyn Bullock was appointed to represent her.  On December 4, 2007, a

superseding indictment (#19) was filed which added a charge of armed bank robbery of a Busey

Bank in Urbana, Illinois, on June 15, 2007.  Defendant filed a Motion to Dismiss with Prejudice

Superseding Indictment of a Minor (#21).  Defendant stated that she turned 18 on September 23,

2007, and was a minor at the time of the June 15, 2007, bank robbery charged in the superseding

indictment.  On December 12, 2007, the Government orally moved to dismiss Count 2 of the

superseding indictment as to Defendant.  This court granted the motion.

On December 18, 2007, co-defendant Thomas pleaded guilty to Count 1 and Count 2 of the

superseding indictment before Magistrate Judge David G. Bernthal.  On January 15, 2008, this court approved Judge Bernthal's Report and Recommendation and accepted Thomas' guilty plea. Thomas' sentencing is currently scheduled for August 5, 2008, at 2:30 p.m.

MOTION TO SUPPRESS

On December 19, 2007, Defendant filed a Motion to Suppress Evidence with Incorporated Memorandum of Law (#26).  In her Motion, Defendant stated that, on September 28, 2007, she had been 18 years old for less than one week.  She had a baby on September 5, 2007, three weeks before the alleged crime.  Defendant stated that she grew up in foster care and is still in foster care and not emancipated because of the birth of her baby.

Defendant stated that the alleged robbery of the Busey Bank in Rantoul occurred on September 28, 2007, at approximately 11:00 a.m.  According to Defendant, she and Thomas were at her foster parents' home and were taken into custody at 3:54 p.m. that day.  Thomas was taken to the police station while Defendant was questioned at her foster home.  Defendant stated that she gave oral statements incriminating to herself between the time of 3:54 and approximately 5:35 p.m. No Miranda warnings were given before Defendant made these oral statements.  Defendant stated that she was then handcuffed and placed in a squad car.  During the ride to the Rantoul police station, Defendant made additional statements.  No Miranda warnings had been given at that time. At the police station, Defendant completed a handwritten confession.

Defendant argued in her Motion to Suppress that she was in custody from the time the police arrived at her foster home at 3:54 p.m. on the day of the robbery.  She argued that she was detained and not free to leave at that time.  Defendant also argued that, based upon the totality of the circumstances, her oral and written statements were involuntary.  Defendant attached her affidavit

2

to the Motion.  In the affidavit, Defendant stated that she was holding her baby daughter when the police arrived at her foster home on September 28, 2007.  She stated that the police handcuffed Thomas and took him away and asked her questions.  Defendant stated that, when the police asked her questions about her baby, she began to cry and said she missed her baby.  Defendant also attached police reports, a copy of her handwritten statement, and a copy of the <u>Miranda</u> waiver she signed at 6:55 p.m. on September 28, 2007.

On January 25, 2008, the Government filed its Response to Defendant's Motion to Suppress Evidence (#28).  The Government stated that the evidence would show that Defendant participated in two bank robberies with her boyfriend, Thomas.  The first occurred on June 15, 2007, when Defendant was 17 and pregnant.  The second occurred on September 28, 2007, when Defendant was 18 and had a three-week-old baby.  The Government contended that Defendant was not in custody when she made statements to law enforcement officers the afternoon of September 28, beginning with denials of any knowledge of criminal activity and culminating with her admission of involvement in the bank robberies to Special Agent Andrew Havrilla.  The Government argued that, to the extent she was detained while the officers executed a search warrant, she was not in custody pursuant to <u>Miranda</u>.  The Government argued that, because she was not in custody, no <u>Miranda</u> violation occurred and the pre-arrest statements should be admitted at trial.  The Government further contended that Defendant's statement while being transported to the police station is not subject to suppression because the statement was volunteered and not made in response to police questioning. The Government also argued that Defendant's recorded and written statements were made after she was advised of her <u>Miranda</u> rights and should be admitted.

On February 11, 2008, Defendant filed a Reply (#29).  In her Reply, Defendant argued that

the police officers used an impermissible two-step pre-<u>Miranda</u>/post-<u>Miranda</u> custodial interrogation process resulting in an unconstitutional evasion of <u>Miranda</u> under <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004). Defendant also again contended that her statements were involuntary due to her immaturity and also due to the psychological coercion used by the police particularly through subtle threats to her motherhood.

An evidentiary hearing was held on February 21, 2008. At the hearing, the Government presented the testimony of six law enforcement officers, Bradley Saltsgaver, David Young, Kevin Kaiser, Jeffrey Wooten, Andrew J. Havrilla and Steven Evans. Defendant presented the testimony of Richard Keith Welch of the Rantoul police department. This court found all of the witnesses who testified at the hearing to be credible. Various exhibits were also introduced into evidence, including Defendant's affidavit, which Defendant requested be admitted into evidence.

The evidence showed that a bank robbery at a Busey Bank in Rantoul, Illinois, occurred around 11:15 a.m. on September 28, 2007. It was reported that an assault rifle was used during the robbery. A witness provided a description of the car the bank robber used following the robbery and a police officer found a car matching that description outside of a residence in Rantoul. The witness was taken to the residence and identified the vehicle as the vehicle that had left the scene of the bank robbery. Law enforcement officers then set up a police perimeter around the residence which involved approximately eight to ten officers. Thomas' brother came to the residence and spoke to one of the officers, Kevin Kaiser. Thomas' brother told Kaiser that Thomas had called their mother in Chicago and said "that he had done something bad" and that he was going to die, he was "going to jail for a long time, or somebody else was going to die." Thomas' brother also informed Kaiser that Defendant and her three-week-old baby were inside the residence.

4

Thomas' brother called Thomas on the phone and, eventually, around 4:00 p.m., Thomas came out of the residence with his arms raised and laid down on the driveway. He was arrested, handcuffed, and placed in a squad car. Defendant was told to come out of the residence and came out holding her baby. At that time, there were five or six officers with guns drawn outside of the residence. Some of the officers checked her and checked the baby to make sure there were no weapons or money on them. Officer Wooten testified that he gave the baby to a female family member or friend. Two or three of the officers escorted Defendant to a safe location near the adjoining duplex. The officers testified that they did not think Defendant was involved in the bank robbery and did not consider her a suspect. At 4:19 p.m., Defendant gave written consent for the officers to go into the residence and search for other occupants. Officer Saltsgaver testified that, when he was talking to Defendant about consent to search, he believed that he established that Defendant was 18 years old. After consent was given, some of the officers searched the residence for additional occupants and found no one else there. Defendant and two of the officers went inside the residence to put together a bag for the baby which included a bottle, formula and diapers.

Officer Kaiser testified that he was inside the residence with Defendant and asked Defendant some questions about Thomas' activities and clothing that day. He also informed her that they were obtaining a search warrant for the residence. Officer Kaiser said Defendant was cooperative and offered to get the clothing Thomas had been wearing. Kaiser told her to wait until they got the search warrant. Officer Kaiser testified that Defendant got up off the couch and went into the kitchen a couple of times while they were waiting for the search warrant. Kaiser testified that Defendant's foster mother, Pamela Martin, came in and out of the residence and spoke to Defendant on a couple of occasions. Kaiser testified that Defendant said she did not understand what was

going on and said she was confused.  Kaiser testified that he advised her to cooperate with the FBI.

Special Agent Evans of the FBI arrived with the search warrant around 5:35 p.m. and the officers began searching the residence.  During the search, Defendant helped locate Thomas' clothing and was described as helpful and cooperative.  Defendant went in and out of the residence during this time.  Wooten testified that Defendant provided details concerning the robbery and property so that it was apparent she knew more than she had originally disclosed to the officers.  Around 6:00 p.m., Special Agent Havrilla of the FBI had a conversation with Defendant outside of the residence near the carport.  Havrilla testified that he had been informed at the scene that Defendant had just turned 18.  He testified that he told Defendant it would be the best thing for her and her baby to tell the truth.  He then asked Defendant if she knew the location of the assault rifle used in the robbery and asked if she knew who was driving the vehicle.  Defendant told him she had driven the vehicle to and from the bank.  At that time, she was emotional and crying.  Defendant was placed under arrest, handcuffed, and transported to the Rantoul Police Department.  Officer Wooten testified that, while he was driving her to the police station, Defendant stated that she had tried to talk Thomas out of robbing the bank and also stated that he had planned it with his brother.  Wooten testified that Defendant volunteered these statements and that he did not ask her any questions.

At the police station, Defendant was advised of her Miranda rights and, at 6:55 p.m., she signed and initialed a form acknowledging her rights.  Subsequently, Defendant gave a recorded oral statement and also completed a written statement regarding her participation in the bank robbery.  She was crying and upset, but had periods where she remained composed and spoke in a rational tone.  She was concerned about her baby and said several times that she missed her baby and wanted her baby and that she did not want them to take her baby.  The officers who conducted the interview

6

testified, credibly, that they did not make any threats about Defendant's baby or use coercive tactics while they were asking Defendant questions. During her statement, Defendant admitted that she had taken her baby along in the car during the bank robbery. After the interview was completed, one of the police officers reported this information to the Department of Children and Family Services.

Following the evidentiary hearing, Defendant filed a 54-page Findings of Fact and Conclusions of Law in Support of her Motion to Suppress (#48). Defendant argued that the evidence presented at the hearing, as well as Defendant's affidavit, showed that her oral and written statements should be suppressed.

On June 27, 2008, the Government filed its Response (#49). The Government stated that the evidence presented at the motion to suppress hearing was consistent with the facts set forth in the Government's prior response and argued that, based upon the evidence and applicable case law, Defendant's Motion to Suppress should be denied.

ANALYSIS

The issues before this court are: (1) whether Defendant was in custody when she made statements prior to being advised of her <u>Miranda</u> rights; (2) whether Defendant's statement while she was being transported to the police station was volunteered and not made in response to questioning; (3) whether Defendant was subjected to an impermissible "pre-Miranda/post-Miranda interrogation technique; and (4) whether Defendant's statements were voluntary.

I.  CUSTODY

A suspect is "in custody" for <u>Miranda</u> purposes when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom

of action in any significant way."  United States v. Thompson, 496 F.3d 807, 810 (7th Cir. 2007),

quoting United States v. Barker, 467 F.3d 625, 628 (7th Cir. 2006), quoting Miranda v. Arizona, 384

U.S. 436, 444 (1966).  "Custody 'implies a situation in which the suspect knows he is speaking with

a government agent and does not feel free to end the conversation; the essential element of a

custodial interrogation is coercion.'"  Thompson, 496 F.3d at 810, quoting United States v. Salyers,

160 F.3d 1152, 1159 (7th Cir. 1998).  The inquiry into whether a suspect is in custody is objective,

the court must look to the totality of the circumstances and consider whether a reasonable person

would have believed that he or she was free to leave.  Thompson, 496 F.3d at 810; see also United

States v. Saadeh, 61 F.3d 510, 519 (7th Cir. 1995).  Therefore, the "initial determination of custody

depends on the objective circumstances of the interrogation, not on the subjective views harbored

by either the interrogating officers or the person being questioned."  United States v. James, 113

F.3d 721, 726 (7th Cir. 1997).  In the usual case, a person detained during the execution of a search

warrant is not "in custody" for purposes of Miranda.  United States v. Burns, 37 F.3d 276, 281 (7th

Cir. 1994); see also Saadeh, 61 F.3d at 520 ("a suspect who is detained during the execution of a

search warrant has not suffered a restraint on freedom of movement of the degree associated with

a formal arrest, and therefore is not 'in custody'").

     The evidence in this case showed that, although police officers initially had guns drawn when

Defendant exited the residence with her baby, the situation changed after Thomas was arrested and

taken away and after Defendant and her baby were searched.  This court agrees with the Government

that, at the moment Defendant left the residence, the officers faced a very dangerous situation.  The

Government recounted that, at that time, the officers had information that an armed bank robbery

with an assault rifle had occurred and that Thomas was responsible for the robbery and was inside

8

the residence.  They also had information that Thomas had stated he was going to die, he was going to kill someone else or her was going to jail for a long time.  After Thomas came out and was arrested, the officers had still not recovered the assault rifle.  Therefore, Defendant was appropriately instructed to exit the residence at gunpoint and she and her baby were searched.  The testimony showed that, after that time, Defendant was free to move about the residence, go in and out of the residence, and speak to her foster mother.  The witnesses testified, credibly, that Defendant was not considered a suspect in the bank robbery.  This was reinforced by Defendant's claims that she did not know what was going on and was confused.  The evidence showed that Defendant was considered a witness, not a suspect, and the purpose in questioning Defendant was to attempt to obtain information about Thomas' activities that day and the location of items in the residence.

This court must determine whether a reasonable person in Defendant's circumstances would have believed she was in custody when she was questioned at her foster parents' home.  Because "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation," Defendant's subjective views cannot be given great weight in making this determination.  See James, 113 F.3d at 726, quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  This court concludes, based upon the evidence and the applicable case law, that Defendant was not in custody during the time she was in the residence waiting for the search warrant and during the time the search was being conducted.  See Thompson, 496 F.3d at 810-11; Burns, 37 F.3d at 281.

Defendant's argument focuses on characterizations made by law enforcement officers involved in the events on September 28, 2007.  She first pointed out that Evans' affidavit for the

search warrant stated that Defendant "surrendered" to law enforcement officers at around 4:00 p.m. She also pointed out that Kaiser's police report said that he spoke to Thomas' brother "[s]hortly before the suspects were taken into custody." However, this court has already noted that the determination of custody depends on the totality of the circumstances and not the subjective belief of law enforcement officers. This court concludes, based upon the totality of the circumstances, that Defendant was not in custody when she was questioned at her residence. Because Defendant was not in custody, <u>Miranda</u> warnings were not required. Therefore, Defendant's statements are not subject to suppression based upon a violation of <u>Miranda</u>.

## II.  VOLUNTEERED STATEMENTS

In her Findings of Fact and Conclusions of Law in Support of her Motion to Suppress, Defendant did not specifically renew her argument that her statements made while she was being transported to the police station were made in violation of <u>Miranda</u>. In fact, the uncontradicted evidence shows that Defendant's statements were volunteered and not made in response to questions. <u>Miranda</u> requires that a defendant be subjected to "interrogation" before its warnings are required. <u>See</u> <u>United States v. Abdulla</u>, 294 F.3d 830, 834 (7th Cir. 2002). "Interrogation" refers to "express questioning" as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>United States v. Hendrix</u>, 509 F.3d 362, 374 (7th Cir. 2007), <u>quoting</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980). A statement volunteered by the defendant is not subject to suppression under <u>Miranda</u>. <u>See</u> <u>Andersen v. Thieret</u>, 903 F.2d 526, 532 (7th Cir. 1990). This court concludes that Defendant's statements were volunteered and are not subject to suppression under <u>Miranda</u>.

10

### III.  USE OF IMPERMISSIBLE TECHNIQUE

In Oregon v. Elstad, 470 U.S. 298, 314-15 (1985), the United States Supreme Court held that a statement given without Miranda warnings did not taint a later confession made after the suspect was given Miranda warnings.  However, in Missouri v. Seibert, 542 U.S. 600 (2004), the Supreme Court limited Elstad where there was evidence that a deliberate two-step questioning technique (i.e., an intentional pre-warning interrogation followed by a post-warning interrogation) was used by the police in an intentional, calculating way to undermine the Miranda warning.  Seibert, 542 U.S. at 618-22 (Kennedy, J., concurring); United States v. Stewart, 388 F.3d 1079, 1090 (7th Cir. 2004).

Defendant contends that the evidence shows that law enforcement officers withheld Miranda warnings when questioning Defendant at the residence so that the later Miranda warnings, given at 6:55 p.m., were ineffective under Seibert so that all of her statements must be suppressed.  This court has carefully reviewed the evidence presented in this case and again concludes that the law enforcement officers testified, credibly, that Defendant was not a suspect when she was questioned at her residence.  Based upon the totality of the circumstances, Defendant was not in custody and Miranda warnings were not required.  Therefore, Seibert does not apply.  See Thompson, 496 F.3d at 811.

### IV.  VOLUNTARINESS OF STATEMENTS

Defendant contends that all of her statements, both before and after Miranda warning were given, were involuntary and coerced and must be suppressed.

Whether a confession was voluntary depends on the totality of the circumstances surrounding the confession, including "both the characteristics of the accused and the details of the interrogation" that resulted in the confession.  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); Gilbert v.

11

Merchant, 488 F.3d 780, 791 (7th Cir. 2007).  Evaluating the voluntariness of a confession is an "exceedingly sensitive task." Jackson v. Denno, 378 U.S. 368, 390 (1964); Gilbert, 488 F.3d at 792. This task requires the trial court to initiate procedures that are "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." Gilbert, 488 F.3d at 792, quoting Jackson, 378 U.S. at 391.  In determining the voluntariness of Defendant's statements, this court can consider Defendant's age, intelligence, education, and experience with the criminal justice system. See Watson v. Detella, 122 F.3d 450, 453 (7th Cir. 1997).  However, this court must view the issue from the prospective of a reasonable person in Defendant's position.  See United States v. Brooks, 125 F.3d 484, 492 (7th Cir. 1997).  This court must apply the totality of the circumstances to determine whether a statement was or was not the product of law enforcement coercion.  See Watson, 122 F.3d at 453.

Defendant's argument that her statements were not voluntary focuses on claims of psychological intimidation based upon her age, lack of maturity, and fear of losing her infant daughter.  Defendant argues that the officers "refused to know Defendant's true age" but treated her as an adult.  Defendant has also argued that the Miranda warnings she was given were ineffective because she was sobbing uncontrollably at the time she signed the form acknowledging her Miranda rights, because she was confused, and because the officers used psychological pressure regarding her motherhood.

In response, the Government has pointed out that Defendant's claims of confusion to officers at the residence show that she was actually quite aware of what was going on and was attempting to avoid criminal liability because "[a]fter all, she did know why the police were there; she had

12

driven Thomas to the bank and helped him hide the money and the gun." The Government also argues that the evidence does not support Defendant's argument that she was subjected to psychological coercion and rather shows that the law enforcement officers acted very professionally during their contact with Defendant and shows that Defendant not badgered or harassed. The Government also points out that Defendant was 18 and was properly treated as an adult.

This court agrees that there is no basis for Defendant's claim that she was inappropriately treated as an adult.[1] See Bridges v. Chambers, 447 F.3d 994, 997-98 (7th Cir. 2006). Defendant did not present any evidence regarding her intelligence or educational level, so there is no evidence before this court that she was in any way impaired in her ability to understand the situation and understand questions. Also, while there is no evidence that she had any prior contact with the criminal justice system, the written statement she wrote for the officers certainly evidenced some knowledge of the federal court system. This court notes that Defendant was understandably emotional and upset, due to the circumstances. Law enforcement officers are, obviously, not prohibited from questioning persons who are upset and emotional about the circumstances they find themselves in. The Government is correct that tears do not render a confession involuntary.

Finally, this court agrees with the Government that discussions regarding Defendant's concern for her baby do not amount to "psychological pressure." See United States v. Santiago, 428 F.3d 699, 705 (7th Cir. 2005). Defendant has relied, in part, on her affidavit in arguing that the police officers asked numerous questions about her baby and repeatedly referred to her baby while asking her questions. Defendant did not testify at the hearing, so these assertions were not subjected

---

[1] This court notes that it is somewhat confused by Defendant's assertion that the officers "refused to know Defendant's true age but treated her as an adult." Evidence was presented that Saltsgaver and Havrilla knew that Defendant was 18 years old. Also, there is no dispute that Defendant was in fact 18 years old on September 28, 2007.

13

to cross examination, nor did she provide the court with the opportunity to assess the demeanor of her assertions while testifying.  See United States v. Marzook, 435 F. Supp. 2d 708, 752 (N.D. Ill. 2006).  Therefore, given the credibility of the law enforcement officers' testimony on the issue of their questioning of Defendant, this court affords Defendant's affidavit substantially less weight than the testimony of the witnesses at the hearing, who were subjected to cross-examination.  See Marzook, 435 F. Supp. 2d at 752.  Based upon the evidence presented at the hearing, this court concludes that Defendant's statements, both before and after Miranda warnings were given, were voluntary and are not subject to suppression.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Suppress Evidence (#26) is DENIED.

(2) This case remains scheduled for a status conference on July 14, 2008, at 9:00 a.m.

ENTERED this 14th day of July, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE